Case number fourteen six four four eight United States of America versus Rodney Lynn Cooper. Arguments not to exceed 15 minutes per side. Ms. Vartanian for the appellant. May it please the court, Jessica Vartanian on behalf of Rodney Cooper. At this time I'd like to reserve three minutes for rebuttal. Mr. Cooper appeals his conviction of felon in possession of a firearm on the basis that he has been denied his Sixth Amendment right to conflict-free counsel. The record contains three unrebutted allegations about events that occurred before trial. First, Mr. Cooper threatened to seriously harm his appointed counsel, Attorney Hunt. Second, the Hunt Law Firm obtained a restraining order against Mr. Cooper. And third, Mr. Cooper's mother filed an ethical grievance against the Hunt Law Firm. The government does not dispute that these allegations are in the record. The trial court did not conduct an evidentiary hearing and made no findings as to any conflict. The only issue for this court is whether the record supports an actual or plausible conflict of interest that adversely affected Attorney Hunt's performance. Mr. Cooper requests that this court find a plausible conflict and order an evidentiary hearing under Wood v. Georgia. The record would also support a finding of an actual conflict or ineffective assistance. As a threshold matter, direct review of Mr. Cooper's claims is appropriate. Appellate courts routinely address conflict claims on direct appeal, and the Sixth Circuit is no exception to that rule. The government cites the judicial preference for deferring traditional ineffective assistance claims, but that rule has no application in conflict cases. The very basis for the judicial preference is the prejudice requirement in Strickland, and there is no prejudice requirement in a conflict case. Well, that's a little over broad, isn't it? There's no conflict. There maybe is a presumption of prejudice in a case of representing conflicting interests, like representing co-defendants, but that's not what you've got here. The standard is less. It's less fact-intensive. It's not prejudice. It's adverse effect. There is a showing that's required. We're not arguing that it's a presumption of prejudice, but often in conflict cases, the record is adequately developed to determine whether a plausible or actual conflict exists. I guess that's what bothers me a little about this case, though, all three of the alleged conflicts. Your client knew this before Mr. Hunt engaged in the representation. This wasn't something that occurred during the trial. He waits until he loses, and now post-trial suddenly says, oh, wait, I had a conflict with Mr. Hunt before, and in fact, I'm looking at page 8 of the sentencing hearing of June 27 of 2013, and your client says, well, Brian Hunt, when you appointed him, he's talking to the judge to represent me in this case here. I wrote him a letter. I said, do you not think the court needs to know about this incident? He came. He talked to me. I said, if you don't think that there's going to be a problem, you know, we can go forward with this. So your client's saying at the time, oh, it's OK. We can go forward. Well, now he's saying, oh, no, no, no, it's a conflict of interest because I lost, and it's all your fault. Well, something strikes me as it's not obvious to me that there is, in fact, a conflict of interest here. It's true that these were events that occurred before trial. It's also true that Mr. Cooper approached Attorney Hunt before trial and asked him about if this conflict was a problem. He's not an attorney. He doesn't understand conflicts of interest, and certainly without the advice of counsel couldn't evaluate what the potential risks were. At that same hearing on June 27th, Attorney Hunt admits that this occurred, that Mr. Cooper approached him before trial about the conflict. And even after that, Mr. Cooper said he changed his mind. He really wanted Attorney Hunt to bring this conflict to the court's attention and was under the conflict to the court's attention, but he did not. And at the hearing on the 27th, page ID 633, Attorney Hunt admits that it was his failure for not bringing the conflict to the court's attention sooner. And it's significant that Attorney Hunt does not deny that these allegations are untrue. He's standing there for the duration of the hearing, and if these allegations were false, it would have been very simple to explain to the court, Mr. Cooper has the facts wrong, and there were no threats of violence, there was no restraining order, and there was no ethical grievance. But he didn't do that. And through his silence, we have effectively an adoptive admission under Federal Rule of Evidence 801. And then we also have his affirmative admissions that he was approached before trial and that he is on counsel to bring conflicts of interest to the court, and it is the duty of the trial court to inquire if there is a plausible conflict presented to it. It is improper to... Does the court's duty require the court to sua sponte, open a record, or reopen a conviction to review a conflict of interest? Sua sponte, yes, if it has reason to believe that a conflict exists. And so in the Kilpatrick case, for example, Judge Edmonds raised the issue of the possible conflict herself. This was sua sponte. It was not at the invitation of counsel. And what she did there was order additional briefing, and she held a hearing, and she made findings of fact. None of that occurred in this case. Well, there was actually a determination by the court as to whether Hunt could continue, right? I mean, is that... How does it fit that the court took it up and said, you know, there's a problem here, or I'm going to appoint someone different for the sentencing hearing? Is that the necessary inquiry? No, Your Honor, I... Why not? It's not because the court did actually not make a finding as to a conflict. The court substituted counsel going forward, but Mr. Cooper's claim was that his attorney had been intentionally ineffective during his trial, and that he wanted an opportunity to prove that that was the case. And although his pro se motion was titled Motion for New Counsel, looking beyond the title of the motion, which the trial court should have done, given this pro se filing, his motion should have been treated as one under Wood or Sullivan. And that was not done here. And so the inquiry... What authority do you have that the Sullivan approach would apply to alleged conflict as you've got it here, where it's not divided loyalties and representing co-defendants? Well, this court, on at least two occasions, has extended Sullivan and Wood beyond the traditional dual representation situation. In Moss v. United States, this court applied Sullivan to a successive representation case. And then in United States v. Taylor, this court applied Wood, where counsel was investigated regarding the disappearance of records. And so we do recognize conflicts exist, aside from representing co-defendants. Right. But where's the divided loyalty in this case? The divided loyalty is that Mr. ... that Attorney Hunt has, or at least had, a belief that his client was dangerous and violent. And then he later represented him in a defense capacity, and that there is a personal conflict there that is difficult to measure, and that's what the cases recognize. And that representation in first, on the one hand, in a prosecutorial role, followed by representation in a defense capacity is not proper. Really, the closest cases on this point are Gray v. Estelle out of the Fifth Circuit. There, counsel had previously sued the defendant for theft, and then later represented him in a murder trial. The court there held that the adversarial past created a conflict of interest, and that it did not matter that the two cases were completely unrelated. And then in United States v. Zagenhagen, the Seventh Circuit addressed a situation where counsel had appeared 20 years earlier to recommend the length of a sentence. And there, counsel did not even remember the prior representation, but when the prior representation was brought to his attention, he failed to inform the trial court of the problem. There, the Seventh Circuit ordered that an evidentiary hearing on remand was appropriate. And so, admittedly, those cases don't involve a restraining order, but certainly obtaining a restraining order is the type of prosecutorial act that would bring about the same issues. So the authority would govern whether we did a wood remand for an evidentiary hearing versus deferring to collateral review? Well, there are several cases, wood included, that support on direct review ordering an evidentiary hearing. And I think the other critical point is what the court would be depriving Mr. Cooper of if it deferred his claims for collateral review, where the right to counsel is not constitutionally guaranteed, and he should not have to use up his one habeas petition on an issue that is really not his responsibility to bring to the court. Again, conflicts are unique in that it is incumbent on counsel to raise these issues and on the court to investigate those issues, and it would be penalizing him to not address his claims on direct review when he has been acting early and often throughout the course of the proceedings. Your client's pretty good, though, at doing pro se stuff. He got counsel changed three times, didn't he? He has, and... And he raised issues about whether there were predicate offenses that were better than his lawyers did. Yes, and his first counsel was replaced because of a conflict of interest that the attorney brought to the court's attention. So that was certainly no complaint by Mr. Cooper for that representation. And yes, significantly, Mr. Cooper, through his tenacity, was able to remove the armed criminal, queer criminal status. But for his own efforts, he would have been subject to at least another five years. Well, I'm just saying, with all his expertise, he could have certainly brought to the court pro se that, hey, I got a conflict of interest with Mr. Hunt. And he did. He did in his... Yeah, but not until after he was convicted, just at the point for him to be sentenced, not during his trial. Well, I think that Sullivan does contemplate a post-conviction form of relief, where a conflict of interest adversely affects counsel. So he's not trying to argue under Holloway, which would be where the... I see that my time has expired, if I may conclude. He's not arguing for an automatic reversal under Holloway, which would occur if there were a pretrial objection that was overruled for these reasons. I don't understand your comment about shouldn't have to use his one habeas motion. I mean, he can include all of his claims. Why is he prejudiced if, among what other claims he wants to bring, he includes the IAC claim? I think most critically, in the habeas proceeding, in order to obtain discovery, that would be subject to the court's discretion and showing of good cause. And if an evidentiary hearing were ordered, I think it would be beyond the court's discretion not to take discovery. And that's another reason why I think he'd be penalized if his claim was deferred for collateral review. For these reasons, Mr. Cooper requests an evidentiary hearing or a new trial. Thank you. Cynthia Davidson for the United States. May it please the court? Defendant would have this court believe that after years of being a diligent party in his own defense and filing pro se motion after pro se motion in his own defense, including asking for a new attorney at least three times, filing pro se motions for discovery, and that he actually physically threatened harm on his attorney, Mr. Brian Hunt, that he depended on his attorney, Mr. Brian Hunt, to bring this conflict before the court. This is simply not the case. In fact, the defendant waited almost three months after he was convicted by a jury to bring this to the attention of the court. And brought it to the attention of his counsel immediately, didn't he? Well, according to the unsealed part of the transcript, Mr. Hunt stated, and I wanted to bring this up to the court, it's page ID number 686 of the February 19, 2015 hearing, Mr. Hunt said in open court that he brought to the attention that there was a conflict between one of his family members and the other attorney in his office. And Mr. Hunt specifically... The other attorney, his father. His father. And there are two people in the office. Yes, Your Honor. His father. There was a conflict between a member of Mr. Cooper's family, I believe it was his mother, and the senior Mr. Hunt, Leslie Hunt. And Mr. Hunt specifically said in this open hearing, Brian Hunt, I asked him, were you involved in that matter at all? And he said no. And so I informed him it shouldn't be a conflict. That is what Mr. Hunt says. And he says later in that hearing that, frankly, he was perplexed. He had no idea about this alleged conflict. He asked his father, and his father had no idea what the defendant was now talking about. This is a convenient conflict where Mr. Cooper alleges that he actively threatened to beat Brian Hunt up. And he doesn't bring this to Mr. Hunt's... No proof that he brought this to Brian Hunt's attention prior to the trial. And you can see from the transcript that Mr. Brian Hunt is quite honestly stunned about these allegations. Unrebutted, he... As far as I know, because the hearing was sealed, I was asked to step out. He has absolutely no idea what Mr. Cooper is talking about. There is no evidence from this record from which this court can determine that there was an actual conflict of evidence. The defendant... Interest. Conflict of interest, not conflict of evidence. I'm sorry. Conflict of interest. The defendant routinely says that alleged in her brief are... There is many alleged. It's the defendant's own statements. And she seeks to give this credit because they're unrebutted. These statements were made in a non-adversarial hearing where the United States was excluded from this hearing. The motion was not termed motion for the court to determine whether there be a conflict of interest. The defendant was again seeking a new attorney. And he brought these allegations up during that hearing. The magistrate court made no findings based on his allegations and gave him a new attorney because many of his allegations appeared to be that his counsel was ineffective during trial. So in order... Clearly, I mean, that's the argument that there's a conflict of interest and you didn't tell the court because it was either embarrassing to you or you didn't want it known publicly because it was about this defendant threatening to beat up this counsel, the counsel that represents him. I'm struggling with why when that comes out and is sufficiently concerning to the court below that he would appoint a new counsel for the sentencing hearing. Why doesn't that impact or cause the court to be required to inquire further regarding the impact of the IAC claim on the actual trial as opposed to just giving him a new counsel? Why doesn't that duty entail a remand for the court to take that back up from an evidentiary standpoint? Your Honor, I'm not sure that the record shows that the magistrate judge was concerned about the alleged ineffective assistance... I mean, I'm sorry, the alleged conflict. I think he was more concerned about the defendant going forward with sentencing when he was already voicing all of these complaints about an ineffective assistance of counsel. He did appoint a new attorney and at that point, Attorney Richard Gaines could have brought up all of these and the defendant was represented by counsel at that point. He claims that Gaines was ineffective for not bringing it up, right? So we're back to the same spot. Was there a duty for the court to have actually examined this issue, the alleged conflict, and would a remand solve that? Your Honor, I could find no law that would require a duty on a court in a case such as this. I do not believe that this was an automatic reversal and the defendant only brings this up seeking a new counsel and so then the court granted his motion and gave him new counsel and then it was not further brought up regarding this alleged conflict and so I don't believe that there was any duty by the district court to make a finding when the issue was never before it. The issue... If we found that there was in fact a conflict, then the two remedies available would be either remand or to defer it to being brought up on collateral review. Is that correct? Yes, Your Honor. If the court found that there was a conflict, then there would be a remand. The court also must find, well, once there's a finding that there is a conflict, which I don't believe that the court can do from this record because there's absolutely no evidence of it other than the allegations of the defendant, and there is certainly evidence that could have been presented. Presumably there is a record of a restraining order that was pursued and people could have been...statements could have been taken, sworn statements. The defendant could have been questioned under oath. Mr. Brian Hunt could have been questioned under oath. It could be the subject of remand. Right, it could be, but Your Honor, in essence, the defendant's main concerns are the ineffective assistance of counsel. This court routinely handles cases like this where there is nothing on the record to support a finding of a conflict of interest. Thank you, Your Honor. This would be more properly handled in a 2255. The defendant's right to counsel, no one in the 2255 has a right to counsel, and so we're not seeking to deprive him of a right that is a routine right, but in practice in the Eastern District of Tennessee, whenever a defendant, whenever the court determines that an evidentiary hearing is needed, then the Eastern District of Tennessee routinely appoints counsel for that defendant. So in essence, if this claim was litigated in what we believe would be the proper venue, 2255, he would have counsel to help him with any evidentiary ruling if the district court determined that that was needed. What's your policy argument for why this should be deferred to a 2255 as opposed to letting it be remanded for an evidentiary hearing on direct appeal? Policy other than the fact that there is nothing in the record which would support a remand. The defendant had no proof whatsoever, but the court certainly could hold the appeal in advance and remand for findings of fact if the court determined that this is necessary. The policy argument simply is that there is already a mechanism set up in the law for this to be handled by a 2255. It should be handled in the district court, and all of his claims are that these were ineffective assistance of counsel, which I don't think he can ever show because he can't, first of all, show that the defense attorney even knew about this alleged conflict. So if the defense attorney did not know of the alleged conflict, how could this have adversely affected? Well, isn't he entitled to an evidentiary hearing to find out? Your Honor, I would say no. He brought this up and aside for the first time really on appeal. He could have brought this up the minute that Mr. Hunt was appointed to him. He certainly knew how to bring things before the court. He had filed motion after motion, but he waited. According to him, he thought that Hunt had brought it up. Exactly. According to him, he was in the trial. He was at every hearing. He would have known if Mr. Hunt would have brought it before the court. He was at every hearing. Well, lawyers file things in writing. I mean, it's not odd for him to think that counsel may have brought something up when he wasn't there. Well, he doesn't allege in the unsealed portions of the hearings that Mr. Hunt told him he brought it up to the court and the court ruled that there was no conflict. He alleges, as I understand it, that Mr. Hunt didn't bring any conflict before the court and neither did the defendant. He sat there in the trial and he heard the entire trial and waited until almost three months later to bring up some alleged conflict after he was unhappy with the results of the hearing. If you look at the transcript of the actual trial, there is absolutely no indication that Mr. Hunt was an ineffective assistant to counsel. He argued the only thing which could have been argued in the best argument in this case, which was that no one saw the defendant take the gun. That was the only defense and he flushed that out to the best of his ability. The defendant's arguments about how any reasonable attorney would have moved to suppress the spoliation issues is simply not correct. There is no evidence whatsoever that that videotape was tampered with. There was any sort of bad faith. He's not saying that. He's saying you erased everything before and everything after. There were other people around that might have taken it. That's what he's saying. He's alleging that, first of all, this was brought up by him. He's saying that they erased it. He's saying that it was copied, as I understand. In the trial, the evidence was put on that it was a looping tape and that it was only kept if a copy was made. During direct evidence, I put on the evidence that they copied whatever was deemed by the video employee to be relevant. Then there was no allegation. No one asked them to maintain all of the future and previous videotape. It was asked for over a year after the incident. He had three attorneys, none of whom even raised this issue. It simply wasn't an issue. If there aren't any other questions, thank you. Thank you. Just a few points on rebuttal. The government refers to a statement at a hearing that Attorney Hunt is saying that Mr. Cooper has no idea what he's talking about. I think it's important to read that statement in context. This is a quote from page ID 628. He has no idea what he's talking about. You know, I've told Mr. Cooper that I don't see how that's a conflict at this point, at this stage. We've had your trial. Unfortunately, you know, you were found guilty by a jury. So read in context, Attorney Hunt is acknowledging the conflict, but he thinks it's irrelevant because a jury has already found him guilty. That is not the Sixth Amendment standard, the conflict-free counsel, which of course applies regardless of how a jury has found a defendant. I'd like to also pick up on a few of the adverse effects that resulted from the conflict of interest that I did not touch upon earlier. The first one is the jail call. Any reasonable attorney would have objected to the jail call. In this jail call, Mr. Cooper states, all the bad I've done is coming back to haunt me. And he also talks about other items, but not a firearm, that he took from the display case. The jury was free to draw inferences that are not permitted and more prejudicial than probative. The jury is thinking he's a bad guy and he stole something, so therefore he must be guilty of stealing this firearm. He said he stole a starter pistol. He refers to a starter pistol and also jewelry. And there was no strategic reason not to object or at least seek a limiting instruction as to that. But the court gave the limiting instruction, didn't it? The court had a very general limiting instruction. However, there was no specific limiting instruction offered with respect to this piece of evidence. And I believe that that would have been appropriate had Attorney Hunt merely requested it. Additionally, the surveillance footage, this was spliced by the manager, so I think we have a chain of custody problem. Also, the rest of the footage was not maintained and that is a spoliation problem. We've got the manager making relevancy determinations about evidence to be used in a criminal prosecution at Page ID. But not making those decisions relative to this particular defendant, right? What he was asked, my understanding is that the request was, give us everything on the tape that is where he goes out and cuts out, presumably, whenever someone's standing over that case. This is not particular, this was not subsequent to the charging of your client, right? It was already done following the robbery, correct? Yes, I believe it was done very shortly after the robbery. I see that my time has expired. May I briefly answer your question? The issue, and it's not that we're pointing blame at the destruction, but it's a problem. And not suggesting there was malice here, but Mr. Cooper wanted this evidence as part of his defense and the problem. Anybody else who was around the case at any time relative that morning, right? Right, but we've got a lay opinion of the store manager about what is relevant and what he sees in the video. And so we have him saying, that is where I started the video because it is the only relevant thing that I found on the DVR. We've also got him saying, Mr. Cooper was the only one that I saw on that video that had leaned far enough over the counter to have done anything. That's a lay person providing his determination, the consequences of which is a limitation on evidence that is then later used at Mr. Cooper's trial. There should have been an objection and that was not done here. And the jail call and the surveillance footage, those are both instances in which Attorney Hunt performed efficiently. Thank you. Thank you.